tain exceptions in cases not applicable to the case at bar, must be upon a notice of "not less than four days." This is a statutory requirement, and cannot be evaded or ignored. As we have seen, the notice of motion given by the plaintiff, upon which the resettled order was granted, was a notice of but one day only, and the defendant especially pointed out to the court and the plaintiff this fatal defect. Notwithstanding this, the plaintiff obtained the granting of the resettled order. The resettled order takes the place of the original order. Matter of Peekamose Fishing Club, 5 App. Div. 283, 39 N. Y. Supp. 124. It is clear that upon the validity of this order of March 26th rests the whole of the later proceedings taken by the plaintiff. The court below, upon being informed that but one day's notice of motion had been given, should have dismissed the motion, and had no authority to disregard the plain provisions of the Code, and to grant an order based upon improper and insufficient notice. The defendant's motion to vacate the order of March 26th should have been granted, and all the subsequent motions, orders, and judgment are the outcome of the basic error committed by the denial of the defendant's motion to vacate the aforesaid order.

The motions to dismiss the appeals must also be denied. Those appeals were taken from orders that effect substantial rights, and the fact that subsequently an interlocutory and final judgment was entered cannot deprive the defendant of its right to have the validity of the orders, which were the foundation of such judgments, reviewed.

The order of March 26th is reversed, with $10 costs and disbursements, and the motion to vacate the order granted, with $10 costs. The order denying defendant's motion to vacate the interlocutory judgment is reversed, with $10 costs and disbursements, and the motion granted. The final judgment is reversed, with costs. The motions to dismiss the appeals are denied. Order denying defendant's motion to open his default reversed, and motion granted. All concur.

---

## VILLAGE OF PORT JERVIS v. ERIE R. CO.

(Supreme Court, Special Term, Orange County. June 30, 1908.)

1. JUDGMENT—CONCLUSIVENESS—PARTIES BOUND.

A village having been sued for injury caused by a defective bridge, and having given a railway company, which the village claims was bound to maintain the approach, due and timely notice of the suit, inviting the company to take charge of the defense, judgment against the village is conclusive upon the company, so far as plaintiff's right to recover is concerned.

2. RAILROADS—SALE UNDER MORTGAGE—LIABILITIES NOT ASSUMED BY PURCHASER.

Any liability of a railway company to keep in repair a bridge over its tracks under an agreement with a village did not pass to a purchaser under foreclosure of a mortgage given before the agreement was made, in the absence of an express assumption of the liability or a provision to that effect in the decree of sale, and in the absence of actual or implied notice of such agreements.

.3. BRIDGES—MAINTENANCE BY MUNICIPAL AUTHORITIES.

     The title to the streets of a village for highway purposes being in the people of the state and not in the village, the village authorities could not validly delegate to a railway company their duty to maintain a bridge over the company's tracks; the bridge forming part of the village streets.

4. SAME.

     An agreement between a village and a railway company, made in 1897, whereby the company agreed to maintain a bridge over its tracks, the bridge forming part of the village streets, if valid when made, was abrogated by Grade Crossing Act, Laws 1897, p. 794, c. 754, providing how such bridges shall be maintained, etc.

5. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—CONTRACTS RESPECTING HIGHWAYS.

     An agreement by a railway company with a village to maintain a bridge over its tracks, the bridge forming part of the village streets, if effective at all, bound the company to keep the streets in repair for the use of the people of the state, and the state could relieve the company from that obligation, and hence Grade Crossing Act, Laws 1897, p. 794, c. 754, enacted after such agreement, and providing how such bridges shall be maintained, is not objectionable as applied to the agreement as impairing the obligation of a contract.

Action by the village of Port Jervis against the Erie Railroad Company. Complaint dismissed.

C. E. & L. M. Cuddeback, for plaintiff.

Bacon & Merritt, for defendant.

TOMPKINS, J. This action is to recover the sum of $1,734.52, with interest, being the amount paid by the plaintiff under a judgment against it, recovered by one John J. Barry, for injuries sustained by him because of the plaintiff's negligence in failing to keep in repair, and in safe and proper condition, the approach to a bridge over the defendant's railroad, in the village of Port Jervis, which bridge and approach thereto were a part of a village street, and this action is based upon the plaintiff's claim that the New York, Lake Erie & Western Railroad Company, a predecessor of the defendant in the ownership and operation of the defendant's railroad, agreed with the plaintiff to keep and maintain the said bridge and the approach thereto in good and suitable repair for public travel, and that the judgment in the Barry suit against the plaintiff herein established the fact that the said bridge where the accident happened had not been kept and maintained in good repair.

Prior to 1890, West Main street, in the village of Port Jervis, crossed the tracks of the New York, Lake Erie & Western Railroad Company at grade. In March, 1890, because of the dangerous character of this grade crossing, the railroad company constructed an overhead bridge over its tracks on a level with West Main street, at a point where it crossed over the Delaware & Hudson Canal, and thereafter all traffic went over this bridge and the approaches thereto, instead of crossing the tracks at grade, and it was upon the approach to the bridge, shown in the plaintiff's photograph, Exhibit No. 16, that the accident to Barry happened. In December, 1891, the plaintiff duly ratified the closing of the grade crossing, and adopted the bridge and

its approaches as a part of the Main street, which acceptance was upon condition that the New York, Lake Erie & Western Railroad Company should within 10 days file with the clerk of said village an agreement to maintain the said bridge and approaches thereto, and on the 4th of January, 1902, the president of the plaintiff reported to the board of trustees that the railroad company had filed an agreement to maintain the overhead crossing bridge, and its approaches forever, which agreement was in writing, and contains the following provision:

"And whereas the board of trustees of said village of Port Jervis, on the 7th day of December, 1901, accepted of said change in said street, and consented to the abolition of the former grade crossing at that point, on condition, however, .that said railroad company should file with said board an agreement to maintain said bridge and approaches: Now, therefore, in consideration of the premises, the New York, Lake Erie & Western Railroad Company, party of the first part, does hereby covenant and agree to, and · with the village of Port Jervis, that said party of the first part shall and will keep and maintain the said bridge and the approaches thereto, in good and suitable repair for public travel, except that it is not to be under obligation to keep such approaches gravelled on the surface as the other streets of said village are kept, in consideration whereof, said party of the first part, shall have the right to close the former grade crossing and exclude public travel therefrom; the party of the second part assuming no liability in the premises."

After the plaintiff was sued by Barry, due and timely notice was given to the defendant of the bringing of the suit, and inviting it to take charge of the defense, and the judgment recovered by Barry against the plaintiff is conclusive upon the defendant, so far as the right of Barry to recover is concerned. The accident to Barry happened on the 28th day of February, 1900. The written agreement by the New York, Lake Erie & Western Railroad Company, by which it agreed to care for and maintain the bridge and approaches, was never recorded in the office of the county clerk of Orange county, and ever since 1892 the plaintiff has assumed control of the said bridge and its approaches, and made them a part of its system of streets, and exercised the usual powers of a village in regard to them, and has permitted a trolley road company to place tracks upon its bridge and approaches, thereby increasing the weight and traffic passing over said bridge and approaches, and has ever since exercised full authority and control over the bridge and its approaches. It also appears that the land on which the approach to the bridge in question was built was the property of the New York, Lake Erie & Western Railroad Company, and was dedicated by it to the public use, which dedication was in writing, and was accepted by and filed with the village trustees.

The first question for decision is whether the Erie Railroad Company, the present defendant, took this railroad property, consisting of the tracks and roadbed under the bridge in question, subject to the agreement made by the New York, Lake Erie & Western Railroad Company, to keep the said bridge and approaches in repair, and that question requires a review of the proceedings under and by which the defendant acquired its property, and a history of the several conveyances leading up to the present ownership of the railroad prop-

erty. The New York & Erie Railroad Company was created by chapter 224, p. 402, Laws 1832, and it acquired the lands upon which this bridge and these approaches were constructed; that company gave several mortgages, and in 1861, in an action to foreclose the fifth mortgage, the property was sold under a judgment of foreclosure and sale, and conveyed to two persons as trustees; later in the same year these trustees conveyed the property to the Erie Railway Company, whereupon that company gave a mortgage to the Farmers' Loan & Trust Company, which mortgage was afterward foreclosed, and under the judgment of foreclosure and sale the property was sold to three persons as trustees. In 1873 these three trustees conveyed to the New York, Lake Erie & Western Railroad Company, and on the 5th day of October, 1875, that company gave a mortgage on all this property to the Farmers' Loan & Trust Company, which mortgage was thereafter foreclosed in the Circuit Court of the United States, and a judgment of foreclosure and sale entered, directing a sale of the property by special master, and on November 11, 1895, the special master sold the property to Coster, Fitzgerald & Thomas, as trustees, and on November 14, 1895, they conveyed the same property to the defendant herein, the Erie Railroad Company. As a result of this review, it will be seen that the defendant holds the property in question under a mortgage which was executed and recorded 13 years before the bridge was built, and acquired the property by purchase under an agreement of foreclosure and sale four years after the bridge and approaches thereto were completed and adopted by the village of Port Jervis as a part of its street system, and while they were in active use by the village as a part of a public street.

Among others, the following facts were found by the court in the foreclosure suit last above mentioned, and the substance thereof incorporated into the decree: Certain specific liens and incumbrances, as set forth on pages 3, 4, and 5 of the decree. That default had been made in the payment of the coupons attached to the bonds secured by the mortgage. That the Farmers' Loan & Trust Company, by reason of the default, was entitled to enforce all the rights, remedies, liens, and security incident to said mortgage, and that the conditions of the mortgage were broken. No reference whatever is made to the agreement made by the New York, Lake Erie & Western Railroad Company with the village of Port Jervis to keep the said bridge and approaches in repair, nor was there any finding of any lien or obligation of that character, nor was there any reference in the decree to the said agreement; while, on the other hand, the decree expressly provided that the property should be sold subject to liens and incumbrances specifically set forth therein, among which there was no mention of any obligation to repair the bridge and approaches in question. The decree contained this additional clause:

"The purchaser or purchasers at said sale shall have the right after the completion of the sale and delivery of the deed, as hereinbefore provided, to elect whether or not to assume or adopt any of the leases and contracts sold with the railroad, and other property and franchises, and the purchaser or purchasers, his or their successors and assigns, shall only be held to have assumed such of said leases and contracts as he or they shall elect."

The decree further provided that the purchaser as a part of the consideration and purchase price should pay the indebtedness and liabilities contracted by the receivers, and such claims and liabilities contracted by the New York, Lake Erie & Western Railroad Company as the Circuit Court should determine to be prior liens to the said mortgage.

It must be conceded that the plaintiff's claim and the agreement under which it is asserted does not fall within any of the claims or liens which under the decree the purchaser of the property assumed, nor is it contended on the plaintiff's part that the Circuit Court has determined the plaintiff's claim to be a lien prior to the mortgage aforesaid, or that any such claim has been filed with the clerk of the Circuit Court, as required by the said decree. The deed from the special master to the trustees who afterward conveyed to the defendant makes no mention of the bridge and the approaches in question, or any rights of the village of Port Jervis, and conveyed only the land upon which the tracks rested and the right of way under the bridge, and the same description is contained in the subsequent deed to the defendant.

My conclusions upon this branch of the case are that the defendant acquired all the rights of the mortgagee under the mortgage made in 1876 and the rights of the New York, Lake Erie & Western Railroad Company in the property conveyed to the New York & Erie Railroad Company free of all obligations which the former company might have assumed after the execution of the mortgage of 1876, and subject only to the incumbrances specified in the decree and deeds, and that it was not taken subject to the said agreement made by the New York, Lake Erie and Western Railroad Company with the village of Port Jervis for the maintenance of the said bridge and approaches, but that the said obligation under the said agreement rests still with the New York, Lake Erie & Western Railroad Company, which so far as the evidence in this case shows has not been dissolved, and is still a corporation. It cannot be that any liability created or assumed by the New York, Lake Erie & Western Railroad Company subsequent to the execution and delivery of the mortgage in question can be a lien or incumbrance upon the mortgaged property in the possession of the purchasers under the judgment of foreclosure and sale, in the absence of an express assumption of such obligation or lien, or a provision to that effect in the judgment or decree. There is no evidence that the defendant took this railroad property with notice of the defendant's claim or with knowledge that its predecessor in title had agreed to maintain and repair the approaches to said bridge. The railroad company or the receivers operating the railroad at the time of the sale under the judgment of foreclosure and sale, and subsequently when the railroad property was conveyed to the defendant, were not in possession of or using or working or repairing the bridge or approaches; on the contrary, the fact that ever since the bridge and approaches were turned over to, and accepted by, the village of Port Jervis, the municipal authorities, at the expense of the village, have cared for and kept in repair the bridge and approaches. There is no

evidence of actual notice to the defendant, and there are no facts from which notice can be implied. It seems doubtful to me whether a village charged by law with the maintenance of the public highways within its limits has power to make a contract such as was made with the New York, Lake Erie & Western Railroad Company, and upon which the claim in this suit is based, and thereby relieve itself for all time from the obligation to maintain and care for a public street. The title to the streets of the village for highway purposes belong in the people of the state, and not to the village of Port Jervis alone, and the duty of the municipal authorities is to repair and maintain them for the use of the people of the state, and no authority is conferred upon them by law to delegate to a railroad company the duty of forever supporting and maintaining such streets, and for that reason I do not think the contract in question could be enforced at law, if the defendant had assumed the obligation imposed thereby, and, even if the agreement was effective when made, it was rendered ineffective by the grade crossing act (chapter 754, p. 794, Laws 1897), which provides how overhead bridges and the approaches thereto shall be maintained and kept in repair, and what part of the cost thereof shall be borne by the railroad company and the municipality; and, among other things, provides that the duty of repairing approaches to such a bridge as the one at Port Jervis should rest upon the village. The plaintiff claims in this regard that the Legislature could not by the grade crossing act impair the obligation of the contract, which had previously been entered into by the village of Port Jervis and the New York, Lake Erie & Western Railroad Company, but that rule does not apply to Legislation by the state releasing persons or corporations from a contract obligation to itself.

The agreement by the railroad company, if good for anything, was to keep the streets in repair for the use of the people of the state, and the state had a right by appropriate legislation, to relieve it from that obligation, and provide a different method, and that was the effect of the grade crossing acts, if the agreement in question ever had any force.

I have carefully examined the cases cited by the plaintiff's counsel in support of his contention that the agreement in question was a covenant running with the land, but I do not find that they apply to the case at bar. In those cases there was no intervening mortgage under which title was taken with no mention or assumption of the covenant.

My conclusions are that the defendant is entitled to judgment upon the merits, dismissing the complaint, with costs.